and we'll hear from Mr. Hester who is representing the defendant in this case. Yes, Your Honor. May I begin? May it please the Court. My name is Dennis Hester. I'm here on behalf of the gentleman from Spring, Texas. He was sentenced last year in the Southern District of Texas to 18 months incarceration based in part on what we are alleging is an erroneously applied sentencing enhancement under Section 2B1.1B11 of the United States Sentencing Guidelines for the unauthorized use of one form of identification to unlawfully produce another form of identification. Mr. Hester, the government maintains that every issue you raise on appeal is subject to plain air review because it wasn't properly presented in district court. I know you challenge that in your reply brief, but tell us why for each of the issues you think they were properly preserved. Well, I believe that... I know you weren't the lawyer at trial, but of course you have the record as it stands. Yes, Your Honor. I believe that the government's alleging that three issues weren't properly preserved. The first being this issue of whether the guideline applies to the use of the identification of a deceased individual. In the trial court, Mr. Suchowolski's counsel objected that he did not create a new form of identification. for the deceased individual after she died. This court has said that objection doesn't have to be precise. It just needs to present the issue for review to the court and allow the court to correct the error. We know that was done in this case because specifically on page 154 and 155 of the record, in the pre-sentence report addendum, the probation officer addresses a person as specifically a case that deals with a deceased individual's identity being used. So we cite to the Sanchez case in our reply brief where Judge Higginson wrote for this court and said essentially where the parties understand that the issue is raised, it's sufficiently preserved. And then in the sentencing proceeding, Judge Lake relied on that authority cited by the probation officer. So we can assume that he read and understood that issue was before the court on a deceased individual. Another issue I believe that the government contends was not preserved was whether the bank account created is a means of identification. Again, we're dealing with a term of art under the guidelines. Mr. Suchowolski broadly objected that he didn't produce another means of identification for the decedent, Ms. Stolzenbach, in this case. As this court held in Neal where it said the defendant sufficiently preserved controlled substance offense. Not being part of the guidelines, we're dealing with a term of art and Mr. Suchowolski's objection that he didn't create another form of identification preserved that error. I would like to begin addressing, well how about it, just start and give us some of the basic facts in the record. As I understand it, when the decedent was alive, the defendant was assisting her with her financial matters and had access to her savings account, checking account, both? That's right, Your Honor. And on page 127 of the record, the government concedes in its pre-sentence report objections. Recall that the government also objected to this enhancement. And the government concedes that Mr. Suchowolski had authorization to produce another form of identification. And that was to be on a joint checking account with Ms. Stolzenbach. Right. Was that an account she had opened and then she made him an additional party to that account? I think the record is unclear on that. I don't think that's in the record. What the record does show is that he was authorized to manage her finances before she died and that they did it through a joint bank account with both of their names on it. But it's unclear whether she had opened that account previously and just joined him as an additional party to the account? From my reading and understanding. So there's nothing in the record to show that she authorized him to open an account before her death? I think the record shows that she authorized him to be a joint account holder with her. And that's part of our argument that this was a... So there's nothing in the record to show she ever authorized him to open an account? I believe it's presumed in the record that she authorized him to be on a joint account with her. Yes, sir, but that's a difference. I'm asking you, is there anything in the record where she ever provided him authority to open an account? To actually go to a bank and open an account, I don't believe so. Nothing I can cite to the court today, your honor. Thank you. However, and that goes to the second point I was hoping to address with the court today, that Mr. Suchalowski's use wasn't unauthorized under the specific use of the word unauthorized under these guidelines. And if we look to the commentary, and I'm looking to comment note 10C of the guidelines, it gives several specific examples of the type of conduct that applies. And what the commission is really discussing is identity theft. It's a form of theft and it's taking someone's social security number from a piece of mail and then opening up credit and running up a line of credit and destroying them financially. I think it's an important point in this case that Ms. Stolzenbach or her estate weren't harmed financially. And the Hawes case, which is cited in my brief, 523F3245, discusses the vague and how this guideline is vague and awkwardly written. So we really need to rely on the guideline commentary. And the commentary gives examples of really aggravated identity theft. And that's just not what happened here. And so if we're following the commentary and the guidance that the commission gave us, also in Amendment 596, which is when this guideline was first enacted in 2000, it discusses we're really trying to punish not even all identity theft, but just the most aggravated forms of identity theft. And that's what's discussed through the commentary and Amendment 596. I do want to turn, with the court's permission, to the issue of whether this guideline can apply to the use of the identity of a deceased individual. And for this, I'm relying on Comment Note 1, which defines a means of identification. How do you steal the identity of someone who's dead? I think that's a very good point. Yes, Your Honor. I think that's a great point. And I think the commission recognized that point in defining that it needs to be an actual individual whose identity is stolen. Remember, the comment actually compares actual to fictitious. And I would think a deceased person may not necessarily clearly fit under either category. Exactly what the comment means is what we'll have to resolve. But fictitious is not the best way to refer to somebody who's deceased, I would think. What's your response? I understand that point. And that is an argument, I believe, of the government. I'm not trying to make the government's argument. I'm trying to get your answer. My answer, Your Honor, is that fictitious refers to actual. Actual means real, existing in fact, under most common dictionary definitions. That's how it's defined in Black's Law Dictionary. The Oxford English Dictionary goes one step further. And this isn't in my reply brief. And frankly, it should have been. It defines actual as existing now. So an existing now individual is not how we would commonly refer to someone who has passed away. She was an actual person. But she is not an actual person. Correct, Your Honor. She was, but she ain't. That's right. And specifically, she wasn't when 18 years after her death when Mr. Suchowowski engaged in the conduct we're discussing here today. When he actually went to Wood Forest Bank and opened that account jointly in their names. She had an identity. I don't know whether she was buried, cremated, or what. But she was a person who died and had an identity that he was still using. So I don't know how you can say she's not an actual person. Well, I just think I'm focusing on the terms actual person. Sure, of course she had an identity, just as any deceased person had an identity. So you're saying to be an actual person you have to be breathing and alive? Under the use of the term actual, which means existing in fact and existing now. Yes, Your Honor. And of course I'm not trying to disrespect anyone who's passed away or say that they weren't. So copyright laws, for example, don't apply to dead people? I'm unfamiliar with that. I do criminal mostly, but I would think that would actually be helpful to our position, Your Honor. Yes, sir. In your opening brief, you argue the rule of lenity. The government, in its response brief, argues against it. And you don't respond to the government in your reply brief. Of course, you're not required to repeat every issue in your reply brief. But do you concede that you don't have a basis for rule of lenity or you just didn't bother to reply in your reply brief? In my reply brief, I did admit that that issue wasn't raised in the district court. Maybe I didn't make it sufficiently clear. So are you conceding you're giving up on rule of lenity? Well, that is what I wrote in my reply brief, and I'll stand by that. However, and I think that's consistent with the case law that it needs to be raised. But I would point out that I view the rule of lenity as a tool of statutory interpretation. So I'm not really sure that it's waived by not raising it. So I think this court could, if we really come down to, after examining the commentary, after examining Amendment 596 and the basis for this guideline, if it's still unclear where we left, I think you still have to apply the rule of lenity in that situation. So you don't concede the point? I suppose not, Your Honor. What I was pointing out was that Mr. Cicholowski's trial counsel did not raise it at sentencing. But in terms of it being a tool of statutory interpretation, I think this court can still rely on it if it needs to. A final point I would like to address is, again, relying on the examples given in the commentary. And what the trial counsel for the government argued in the trial court, that this conduct is really more akin to an example that the commentary says doesn't qualify for the enhancement. And that is forging someone's signature on a check to cash that check. And the government argued that in the trial court. And that's really what Mr. Cicholowski did. He went to the bank. He signed Ms. Stolzenbach's signature on a signature card and used her name to open an account. This is not the sort of aggravated identity theft that the commentary discusses in terms of… Just went on for what, 14 years? Well, it went on from 1990 to 2008 in the joint bank account that they had together. Right. And then from 2008 to 2014? Correct. After he opened a fraudulent account? He did, Your Honor. And I think it's an important point that in Amendment 596 in the commentary also discusses this, that we're trying to address conduct where you're concealing the fraud. And this fraud was discovered based on the government's checking up on Medicare beneficiaries who hadn't used their benefits in three years. So it wasn't concealed by his use of the joint bank accounts. The government would have discovered it through the use of this three-year program. Three years later. I apologize, Your Honor. Three years later. They don't check but every three years, which is astounding. But by doing what he did, he was able to get away with this for 14 years. By using the identity in the manner he did in this case, he was able to continue cashing checks. And our argument is consistent with what the government argued in the trial court. That's really akin to forging a signature on a check to cash that check and continue receiving it. We are asking the court to remand to the district court so Mr. Suchowowski can be sentenced under a fair guideline calculation and look forward to addressing the court on rebuttal. Thank you. Thank you, Mr. Hester. We'll hear from Mr. Reed. Assistant United States Attorney. May it please the court, opposing counsel John Reed on behalf of the United States. Your Honors, in this case, the two-level enhancement for identity theft, that is using a means of identification to produce another means of identification, should be affirmed because Mr. Suchowowski's conduct falls comfortably within the ambit of the guideline. Mr. Suchowowski used one thing that's listed in the statutory definition to produce another thing that's listed in the statutory definition of a means of identification. He used the name and social security number of Mrs. Stolzenbach to produce a checking account, not once, but twice, in 2008 and 2011. Those accounts generated routing numbers. Routing numbers, names, social security numbers are all included within the statutory definition of a means of identification. This conduct qualifies on the plain face of the guideline. Now, the claim that Mr. Suchowowski was authorized to use Mrs. Stolzenbach's name and social security number may have been correct in 1990 or up until 1990 until Mrs. Stolzenbach passed away. Once she died, the authority to continue to use her name and actually do something different with that name, open a new account, is no longer in effect. But you know, I mean, the government's changed its tune a little bit, hasn't it? We have, Your Honor, in the district court. You didn't think the enhancement was appropriate before the district court. In the district court. The district court didn't pay any attention to you. That is correct, Your Honor. The district court was not bound by any concessions, of course, that the government made. The trial prosecutor and defense counsel were both operating under the premise that Mr. Suchowowski's conduct was less than it actually was. They were mistaken. When you look at the district court's reasoning, the reasoning of the probation office in explaining the guideline and examine the case law that applies to this guideline, I cannot tell you that the district court made a mistake when it made the legal determination that the guideline is appropriately applied in this case, Your Honor. Remind me, what specifically was the original position, the basis of the original position by the government and the district court? What was its argument? The argument was made by the prosecutor and the defense counsel was that Mr. Suchowowski did not expand the scheme and that he had authorization to use the name initially, which is correct and it was conceded below, and that he didn't produce something new, a new means of identification, which we actually know is incorrect. You need to speak up a little bit, Mr. McFarland. I apologize, Your Honor. We actually know that that was incorrect. He did produce a new means of identification as statutorily defined within the guideline and the incorporated statute. And he produced that by using that signature card that he forged? Well, he used the signature card, Your Honor. He did forge her signature, but it's not my contention that the signature, the forged signature, is the use of identification. It's her name, her name and social security number, by the way, both of those in tandem. So our view is that this could not, was not, and could not be an authorized use of her name. I would also point out even if the court found somehow that Mrs. Stolzenbach authorized Mr. Suchowowski to use her name in this manner, that would be an unlawful use. Once she passed away, she and her estate were no longer entitled to receive benefits. So you can't consent to the use of your name for an unlawful purpose, which is what would have been the case here. The fact that Mrs. Stolzenbach was deceased at the time of the opening of the new accounts does not preclude the application of this enhancement for a number of reasons. If you look at the plain language of the statute, it is broadly worded. My view is that it's broadly worded on purpose. This is a specific offense characteristic. There's no indication that Congress intended to limit it in the way that Mr. Suchowowski argues, and that is through identities of living persons. Actual persons. That's correct, Your Honor, and that's a very important point. The definition says it's a means of an actual, i.e., not fictitious, individual. And they use the word individual rather than person, but I think those are used interchangeably within this guideline. But actual, not fictitious. In the Filidor case from the 11th Circuit, it's a published decision cited in my brief. The court looked at this identical language in slightly different circumstances, but the same guideline language, and the court held, i.e., not fictitious, the natural way to read that language is that that is the exclusive definition and the only limitation that's placed on actual. Now, this makes sense because you wouldn't naturally say that just because someone has passed away, and let's say I'm looking at their Social Security card, that this no longer identifies an actual person. It is an actual person. It's real. The person is real as opposed to... It was an actual person. That's true. Was an actual person as opposed to someone who is made up. But not is an actual person. Fictitious. That's true. Now we're getting into the theological realm. Well, that's probably true, Your Honor. We've heard before, it depends on what the meaning of is is. That has been said before, Your Honor. It has been said before.  I don't think is or was, either one. So there's no timing stated, it's just actual versus fictional, that the means of identification shall be of an actual individual. I'm not saying it's perfectly clear, but I don't think the difference between is and was is part of the definition. I don't think it is either, Your Honor. It's the difference between... With due respect to my presiding colleague. Well, I didn't say it was part of the definition. I'm just saying somebody who is actual, I mean, was actual, but going to that point, Judge Jolly asked the question of opposing counsel, how can you steal the identity of a dead person? Well, very easily, Your Honor. You can scan the death records in your local obituaries to find the name of someone who is deceased. Through some Internet research, you can probably learn their Social Security number, just as you would with a living person, and you can use that identity. Now, this is a real person, again, as opposed to some fictitious John Doe. And using someone's name who's real, as opposed to made up, actually makes it easier to commit this offense for a couple of reasons, as some of the cases point out. But it's also easier to commit this offense when the person is deceased. And when I say commit this offense, I mean identity theft. When the person is deceased, you don't have a living individual walking around who's going to complain about anything that's going awry with their accounts, and you don't have someone who may create a contrary paper trail. You lower your risk of detection by using someone's identity when that person is deceased. When you do that, you decrease your risk of being caught. You're worthy of being punished more severely, which is what this guideline does. Now, the goals of Congress in implementing this guideline, 2B1.1, particular subsection. Subsection has been renumbered several times, so you'll see it referred to a little bit differently in some of the older cases. But Congress was addressing a form of identity theft, which it considered to be an aggravated form, known as affirmative identity theft, also called breeding. What happens here is defendant takes one form of identification, breeds, creates something new. It's the multiplication of these identities that Congress was addressing. This happens regardless of whether the source identification that person is living or dead. Additionally, just because you misappropriate the identity of someone who's deceased, that does not mean this is a victimless crime. It's true, as opposing counsel has pointed out, the guideline does discuss harm that occurs to a living person, such as harm to their credit, let's say, and reputation. But that's not the only harm. You also have harm to, this is a perfect example in this case, governmental agencies or private businesses that rely on misrepresentations that have been made by the defendant about a person's identity. The harm that results fits comfortably within the guideline. The Appendix C to the guideline does mention individual as well as institutional victims. So it can't be, and it doesn't make sense, that the guideline would be limited solely to the identities of living people. It's probably not written to cover a situation like this, though, to be frank about it, to be candid about it. It can cover this situation. Well, it may cover it, but it's not written to cover it. Well, I don't know that I would agree with that, Your Honor. When the appendix references institutional as well as individual victims, they have to be referring to something other than just a living person. An institutional victim is not a living person. Mr. Cichowalski's conduct, while not something that comes immediately to mind when you discuss identity theft or think about identity theft, still falls within the parameters of this guideline. He used one source identification to create another identification, and he did so in a way to misappropriate funds. The fact that he didn't precisely follow the guideline examples of obtaining a loan or extending credit also doesn't preclude the application here. This court has affirmed the application of this guideline in context other than just obtaining a loan or extending credit. It did so with defendants who obtained personal phone numbers. It's done so when a defendant obtained FEMA benefits. These cases are cited in my brief. So it's not limited solely to the extension of credit or obtaining a loan. The guideline examples in the commentary, the common denominator of those examples are the creation of something new. It's the multiplication or the breeding of an additional form of identification, and that's what happened here. But if you want to try and analogize the conduct to obtaining a loan, I think you can do so. In the example of fraudulently obtaining a loan, a defendant will use a source identification to fill out an application, and he probably is going to sign that application and forge a signature, right, convince the bank to give a loan to this person, and the bank thinks they're giving the loan to a legitimate applicant. Well, here, Mr. Sokolowski took the identifying information of Mrs. Stolzenbach. He signed a signature card. He used the name. He didn't get a bank loan, but he got a bank account, and this bank account was then used to induce Social Security to deposit funds. He had to have the account because he was not going to get any more funds when they started direct depositing Social Security payments. That's absolutely correct, Your Honor. He would not have been able to continue committing the offense after 2008 because the paper checks would presumably have been discontinued. Now, his conduct is not. Can you clarify one thing for me? It's about initially when she first gave him permission to have a, was it a joint account then? I mean, did they have an account from the beginning? It's unclear from the record, but it was, as the opposing counsel said, it was presumed that that was the case, and I can't tell you one way or the other. I am assuming it was some sort of joint account that was in existence at the time. But no evidence of her authorizing him to open a joint account for that purpose. That's correct. The PSR does not reflect whether or not she specifically told him, go open this account. All it says is he was authorized to assist her in managing her financial affairs and paying her bills. If it was a joint account, it would have, I guess, borne her signature on an authorization card, would it not? I assume so. It's been a long time since I opened a bank account, but I do recall having to provide my signature at that time. So I assume so, Your Honor. But the initial account, it's undisputed that, regardless of whether there was an initial account, once Social Security changed its procedures in 2008, it's undisputed that he opened a new account in 2008. He then opened a new account in 2011 when the original bank from 2008 closed. So he continued the fraud even. I mean, to support the enhancement, you're relying both on the 2008 event and the 2011 event, correct? I'm relying on both, but either one would satisfy the guideline, either one alone. If for some reason the court found, well, in 2008, it was a continuation of the original fraud for some reason, well, he perpetuated it in 2011 when that bank went out of business and he opened another joint. Arguably, the very fact he had to open a checking account in 2008, I think there's a presumption that she didn't have a checking account before then. He would have just given them the checking account number and they'd have deposited the checks directly into it. I would suspect so, Your Honor. I mean, that's what I would think would happen, but that didn't happen. So maybe it wasn't a checking account. I don't know. It's just that the record doesn't indicate. But what we do know is he did open the new account in 2008, and again, the account number, the routing number all satisfies the definition. As I said earlier, although this is not a stereotypical form of identity theft, it does fit within the definitions as Congress has provided them, and that's what we have to work with. One of the examples I thought in the commentary was that this would not apply to forging a signature on a check. Is that correct? That's correct. It seems to me that there are at least aspects of that in what we're looking at here. He did not create new money by what he did. He continued the fraud that allowed the receipt of the money that was already coming. He didn't go to the bank and get new money on a loan. I'm not saying those distinctions matter. I'm sure you would say they do not. But when we have on one side knowledge from the commentary and the guidelines that it's not just forging a signature on a check, we do know that opening a bank account, I mean, getting a loan would be sufficient. I'm just wondering why this fits on your side rather than on the defendant's side. Well, two responses, Your Honor. First of all, it's when you steal a check and you endorse it fraudulently with someone else's name and you cash that check, yes, I've stolen money, but I haven't created anything. When I forge a signature, use someone's name to open a bank account, I have created a new account number. Again, that account number satisfies the definition of a means of identification. It doesn't matter whether or not it's new money. In this case, it was a continuation of the fraud that initially began, but it was done in a more sophisticated means. It was done in a way that Congress has determined to be an aggravated form. So he went from merely stealing money, and had he stopped in 2008, he would not have been subject to this enhancement. But he went further. He opened an account, created the new form of identification that goes further. Now, as far as the new money aspect that Your Honor raises, again, it's not just obtaining a loan or extending credit. Again, this court has affirmed the application when a defendant has received a telephone number. No new money or credit involved there. It's affirmed where the defendant has obtained FEMA benefits. No new money or extension of credit involved in that case either. So, again, Congress is focused on this creation, this multiplication of the identities. And that, again, just fits within the conduct that Mr. Sotowalski engaged in. Okay, is that about it, Mr. Reed? That is about it, Your Honor. We ask that the court affirm the judgment of conviction and sentence. Thank you. Thank you very much. Mr. Hesse, you have some time for rebuttal. Thank you, Your Honor. I'd like to begin going back to the deceased individual issue. And Mr. Reed discussed the Filidor case, and he cites a number of other cases in his briefing. And the PSR addendum cites a case that I discussed earlier where a deceased individual's identity was used. The distinction between those cases and this one is pretty simple. Those cases all rely on an interpretation of 1028A, A1, which is the aggravated identity theft statute. That statutory language refers to another person as opposed to an actual person's identity being used. And the Jimenez case cited in my brief discusses the vagueness of the term person, how it can refer to a living or a dead person. So I think it's just fundamentally different when we're talking about another person versus an actual person. And in this case, the court has to decide whether an actual person. I mean, as Mr. Reed pointed out, a dead person has an actual identity. I mean, there's no question about that, is there? There is no question about that, Your Honor. But I would respond that the commentary requires the use of an identity but the use of an identity of an actual person. And to me, the most reasonable interpretation of actual is a living person. But the most natural interpretation of a fictional one is not a dead person. And those are our two choices. I understand the court's point, Your Honor. I think some definitions of actual say real, which is the opposite of fictitious, right? I mean, John Grisham's in the business of fiction. We're in the business of fact, I suppose. He's making more money than we are, but nonetheless, it's superficial. But it does seem to me that is the difference we're talking about, fiction versus fact. I think that's one example that the commission gave us. It said, i.e., not fictitious. I don't think that... I mean, why would actual not apply to dead people? I mean, in terms of the purpose of the guideline. In terms of the purpose, because if we go back to Amendment 596 and really read that in full, which talks about the purpose of the guideline, Judge Jolly, and it talks about the severe damage to an individual's credit or ruining them financially. And so that's really what the commission was concerned with here. And the commission even talks about all the forms of identity theft in Amendment 596. And it finishes, I'm looking at page 63 of Appendix C. It says the commission determined this aggravated offense conduct, in contrast to the most basic forms of identity theft, merits enhanced punishment. So we're really talking about the more aggravated offense conduct that's ruining a living person's credit. If they wanted to really drive that point home, it could have used the word living instead of actual. And they probably should have. I just think reading it by its basic terms includes only living human beings. And the court may disagree. That's the issue that the court has to decide, Your Honor. I think the commission could have been a lot more clear in a lot of these explanations in the language itself. But what the Haas decision says, the decision from the Third Circuit, is we rely on the commentary because the language of the guideline is so unclear and so vague. So looking at the commentary and those examples, it's stealing someone's Social Security number, stealing their driver's license and name, and running up credit and loans. That's not what happened in this case. Again, Ms. Stolzenbach wasn't financially harmed. Her estate wasn't financially harmed. She wasn't even a victim in this case. Like in Haas, the defendant's use of her name was to continue cashing checks that he wasn't entitled to. Like in Haas, I think the district court made a mistake in applying this enhancement. And we respectfully ask that the court reverse and allow Mr. Sijalowski to be sentenced under an accurate guideline calculation. Thank you. Thank you, Mr. Haas. Yes, sir. Thank you, Your Honors.